**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| STOCKBRIDGE-MUNSEE COMMUNITY, )<br>)<br>Plaintiff,      )<br>) Civil Action No. 08-1031 (EGS)<br>v.         )<br>)<br>UNITED STATES OF        )<br>AMERICA, *et al.*,      )<br>)<br>Defendants.     )<br>) | |

### MEMORANDUM OPINION

Plaintiff, the Stockbridge-Munsee Community, Band of Mohican Indians ("the Stockbridge-Munsee" or "Plaintiff"), challenges the Department of Interior's ("Interior") May 23, 2008 decision to take certain lands located in New York into trust for the benefit of another tribe, the Oneida Indian Nation of New York. Plaintiff also names the Secretary of Interior and the Associate Deputy Secretary of Interior, in their official capacities, as Defendants (collectively, with Interior, "Defendants"). Plaintiff argues that some of the land Defendants seek to take into trust is within the historical boundaries of Stockbridge-Munsee tribal land. Plaintiff seeks both declaratory and injunctive relief to set aside Interior's decision under the Administrative Procedure Act ("APA"). Defendants seek to transfer the case to the Northern District of New York where six

1

other challenges to the same administrative action are pending. Upon consideration of Defendants' Motion, Plaintiff's Opposition, Defendants' Reply, the applicable case law, the entire record herein, and for the reasons discussed below, this Court **GRANTS** Defendants' Motion to Transfer Venue and to Suspend Obligation to Answer in the District Court.

## I. BACKGROUND

The United States can acquire and take land into trust for the benefit of individual Indians and tribes, pursuant to "the authorities, policy, and procedures" of 25 C.F.R. § 151. Interior, the agency empowered to take lands into trust under the regulations, must notify the state and local governments having jurisdiction over the land to be acquired. *Id.* § 151.10. Interior must also consider the potential impact of the acquisition on regulatory jurisdiction and real estate taxes. *Id.* When Interior places land into trust, the placement preempts state and local regulation of the use of the land. *See* Act of May 25, 1926, ch. 379, 44 Stat. 629 (formerly codified at 43 U.S.C. §§ 733-736 (1975)); 25 U.S.C. § 465; 43 C.F.R. § 2564.4; 25 C.F.R. §§ 1.4, 152.22.

In the 1970s, the Oneida Nation filed a lawsuit claiming that certain lands were improperly taken from the Nation by the state of New York. *See, e.g., Oneida Indian Nation of N.Y. v.*

*Oneida County*, 414 U.S. 661 (1974).  In 1986, the Stockbridge-Munsee filed a land claim in the Northern District of New York against the state, surrounding counties, and the New York Highway Department.  *See Stockbridge-Munsee Cmty. v. New York*, No. 86-1140 (N.D.N.Y. filed Oct. 15, 1986).  The Oneida Nation intervened in the Stockbridge-Munsee suit, claiming an interest in the land at issue.  The Stockbridge-Munsee filed an amended complaint in 2004, arguing that the land it challenged was never part of an Oneida reservation.

After the U.S. Supreme Court ruled that the Oneida Nation could not unilaterally assert tribal immunity over land it recently acquired in the City of Oneida, New York, *see City of Sherrill v. Oneida Indian Nation of N.Y.*, 544 U.S. 197, 220-21 (2005), the Oneida Nation petitioned Interior to acquire title to approximately 17,370 acres of real property in trust for the Oneida Nation.  The land spans Madison and Oneida counties in the north-westerly part of the state of New York.

In accordance with the regulatory scheme of the National Environmental Policy Act, 42 U.S.C. § 432 *et seq.*, Interior consulted with the state of New York and the local governments, and reviewed the comments received by the Stockbridge-Munsee.  On May 23, 2008, Interior issued a decision taking approximately 13,000 acres into trust for the Oneida Nation.

The Stockbridge-Munsee Community is an Indian tribe recognized by the United States.  On June 17, 2008, the Stockbridge-Munsee filed a Complaint with this Court naming the United States, Interior, Dirk Kempthorne, as Secretary of Interior, and James S. Cason, as Associate Deputy Secretary of Interior, in their official capacities, respectively.  Plaintiffs filed an Amended Complaint on July 21, 2008.  In the suit, Plaintiff seeks review of Interior's May 23, 2008 decision to take land in trust for the Oneida Nation.  Six other cases have been filed in the Northern District of New York, claiming that Interior's decision was arbitrary and capricious in contravention of the APA.  *See Cent. N.Y. Fair Bus. Ass'n v. Kempthorne*, No. 08-660 (N.D.N.Y. filed June 21, 2008); *Niagra Mohawk Power Corp. v. Kempthorne*, No. 08-649 (N.D.N.Y. filed June 20, 2008); *City of Oneida v. Kempthorne*, No. 08-648 (N.D.N.Y. filed June 19, 2008); *Town of Verona v. Kempthorne*, No. 08-647 (N.D.N.Y. filed June 19, 2008); *New York v. Kempthorne*, No. 08-644 (N.D.N.Y. filed June 19, 2008); *Upstate Citizens for Equality, Inc. v. United States*, No. 08-633 (N.D.N.Y. filed June 16, 2008).

The Stockbridge-Munsee seek relief under the APA, 5 U.S.C. §§ 702, 706; the Indian Non-Intercourse Act, 25 U.S.C. § 177; federal common law; the 1788 Treaty of Fort Schuyler and the February 25, 1789 New York implementing statute; and the 1798 Treaty of Canandaigua, 7 Stat. 44.  The instant suit alleges that

Defendants, *inter alia*, failed to consider whether the land acquisition would extinguish Stockbridge-Munsee property or treaty rights.  Defendants filed this motion on August 28, 2008.

## II.  DISCUSSION

The Defendants have moved this Court to transfer this case to the United States District Court for the Northern District of New York under 28 U.S.C. § 1404(a).  The statute provides as follows:

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

The threshold question for this Court is whether this case could have been brought in the Northern District of New York.  *See Shawnee Tribe v. United States*, 298 F. Supp. 2d 21, 23 (D.D.C. 2002).  "A civil action wherein jurisdiction is not founded solely on diversity of citizenship may . . . be brought . . . in a judicial district in which . . . a substantial part of property that is the subject of the action is situated."  28 U.S.C. § 1391(b)(2).  As the land at issue is situated in the Northern District of New York, the Stockbridge-Munsee concedes that the case could have been brought there.

This Court has the discretion to grant the motion to transfer. *See Shawnee Tribe*, 298 F. Supp. 2d at 23.  "The Court must balance a number of 'case-specific' factors when determining

whether or not transfer of the case is appropriate." *Id.* (quoting *Stewart v. Ricoh Corp.*, 487 U.S. 22, 29 (1988)). Defendants acknowledge that they carry the burden of showing that the balances of factors warrant transfer. *See Citizen Advocates for Responsible Expansion v. Dole*, 561 F. Supp. 1238, 1239 (D.D.C. 1983).

This Court has articulated a list of private and public factors to be weighed when considering the transfer of a case. In *Shawnee Tribe*, this Court said:

> The private interest considerations include: (1) the plaintiff's choice of forum, unless the balance of convenience is strongly in favor of the defendants; (2) the defendant's choice of forum; (3) whether the claim arose elsewhere; (4) the convenience of the parties; (5) the convenience of the witnesses of the plaintiff and defendant, but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; (6) the ease of access to sources of proof.
>
> The public interest considerations include: (1) the transferee's familiarity with the governing laws; (2) the relative congestion of the calendars of the potential transferee and transferor courts; (3) the local interest in deciding local controversies at home.

298 F. Supp. 2d at 24 (citing *Trust Unlimited v. U.S. Dep't of Agric.*, 944 F. Suppp. 13, 17 (D.D.C. 1996)).

   **A.   Private-Interests Considerations**

The "plaintiff's choice of forum is afforded great deference, and is a 'paramount consideration' in any determination of a motion to transfer. However, that choice is conferred less deference by the court when a plaintiff's choice

of forum is not the plaintiff's home forum." *Id.* (internal citations omitted); *see also Citizen Advocates*, 561 F. Supp. at 1239. The Stockbridge-Munsee's home forum is Wisconsin. Defendants' choice of forum, given other pending actions dealing with the same land dispute and the same administrative decision, is the Northern District of New York. Like in *Shawnee Tribe*, Plaintiff argues that events giving rise to this suit occurred in Washington and that the case should be heard here. 298 F. Supp. 2d at 25. "[M]ere involvement," however, "on the part of federal agencies, or some federal officials who are located in Washington, D.C. is not determinative." *Id.* at 26. Though the administrative action at issue in this case arose in Washington, "the only real connection [the] lawsuit has to the District of Columbia is that a federal agency headquarted here . . . is charged with generally regulating and overseeing the [administrative] process." *DeLoach v. Philip Morris Co., Inc.*, 132 F. Supp. 2d 22, 25 (D.D.C. 2000). As the D.C. Circuit noted in *Cameron v. Thornburgh*, 983 F.2d 253 (D.C. Cir. 1993):

> Courts in this circuit must examine challenges to personal jurisdiction and venue carefully to guard against the danger that a plaintiff might manufacture venue in the District of Columbia. By naming high government officials as defendants, a plaintiff could bring a suit here that properly should be pursued elsewhere.

*Id.* at 256.

Defendants note that they are facing six challenges to Interior's land-into-trust decision in the Northern District of New York, and that it would be more convenient for them to defend the same decision in one forum.  Plaintiff argues that because Interior has assigned this challenge to a different section within the Department than the one that is handling the other cases, this should lessen any inconvenience to Defendants. Defendants counter, however, that Interior's positions amongst the different sections will be coordinated.  Plaintiff and Defendants agree that this case is to be decided based on the administrative record; therefore, convenience to witnesses is a non-factor.  Given that APA challenges are limited to the administrative record compiled by the agency, *see Fla. Power & Light Co. v. Lorian*, 470 U.S. 729, 744 (1985), neither does "the ease of access to sources of proof" constrain the Court from transferring the case, *Shawnee Tribe*, 298 F. Supp. 2d at 24.  The administrative record here is the same as the one in all six cases pending in the Northern District of New York.

The Court concludes that the private-interest considerations favor transfer.  Having evaluated the private interests, the Court must still consider the public-interest considerations.

**B.   Public-Interest Considerations**

Defendants note that the Northern District of New York and the Second Circuit have considerable experience with land

disputes in New York. All six actions that were filed as a result of Interior's decision in May 2008 have been assigned to the same judge; the Stockbridge-Munsee action filed in 1986 has also been assigned to the very same judge. Furthermore, the Stockbridge-Munsee filed an action in the Northern District of New York for a preliminary injunction challenging the land-into-trust decision. *See Stockbrige-Munsee Cmty. v. New York*, No. 08-1140 (N.D.N.Y filed June 24, 2008). Although the preliminary injunction challenge was subsequently withdrawn, Plaintiff does not dispute that the Northern District of New York has particular expertise in adjudicating land disputes involving Indian tribes and the U.S. Government. Neither side has made any contention that the transferring of this case to the Northern District of New York will congest that court's calendar, and therefore this Court does not consider that factor in its analysis.

Transferring this case to the Northern District of New York will also avoid inconsistent results and waste of judicial resources. See *Ledyard v. United States*, 1995 WL 908244, at *2 (D.D.C. 1995) ("The action here and that in [New York] seek review of the same administrative decision and present similar claims and demands for relief. If this case were transferred to [New York], the cases could be consolidated, thus saving expense to the public and avoiding the duplicative use of judicial resources.") (citation and footnote omitted). The fact is, this

case, and the six other cases cited above, all challenge the same administrative decision.  *See Cont'l Grain Co. v. FBL-585*, 364 U.S. 20, 26 (1960) ("a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy and money that § 1404(a) was designed to prevent").  The issues here clearly overlap with the cases before the Northern District of New York, even if the cases technically are seeking different relief.  *See Martin-Trigona v. Meister*, 668 F. Supp. 1, 3 (D.D.C. 1987) ("The interests of justice are better served when a case is transferred to the district where related actions are pending.").  The public-interest considerations, likewise, weigh in favor of transfer.

### III.  CONCLUSION

In balancing the factors in this case, it is in the interest of justice that this case should be transferred to the Northern District of New York.  Defendants' Motion to Transfer Venue and to Suspend Obligation to Answer in the District Court is **GRANTED**.  An appropriate Order accompanies this Memorandum Opinion.

**SO ORDERED.**

**Signed:    Emmet G. Sullivan**
**United States District Judge**
**January 5, 2009**